FAY, Circuit Judge:
The question presented in this matter is whether a foreigner who has been arrested and detained in this country and alleges a violation of the consular notification provisions of the Vienna Convention on Consular Relations (the “Treaty”) can maintain an action under 42 U.S.C. § 1983. The answer to this question hinges on whether or not individual rights are bestowed by the Treaty. Although we find the issue a close one with strong arguments on both sides, we ultimately conclude the answer is “no.”
Appellant, Hector Gandara (“Gandara”) is a foreign national who was arrested and sentenced in state court for false imprisonment. He claims that while he was a detained foreign national, the Glynn County Detention Center officers (“Appellees”) neither informed him of, nor provided him with, the right to consular notification under the Treaty. On appeal, Gandara argues that the district court erroneously dismissed his complaint contending that the Treaty grants him an individual right to seek civil damages in a United States federal court under 42 U.S.C. § 1983.

Factual Background

Gandara, an immigrant from Uruguay, entered the United States on a 90-day temporary visa. After his visa expired on June 22, 2002, he illegally remained in the country. On September 11, 2004, Gandara was arrested in Glynn County, Georgia and charged with false imprisonment. He pled guilty and was sentenced to five years in prison and five years of probation. Gandara claims that following his arrest and during the pendency of his criminal proceedings, the Appellees did not inform him of his right to contact the Uruguayan consulate and receive legal representation pursuant to Article 36 of the Treaty. Gan-dara also claims that Appellees subsequently denied his specific request that he be allowed to contact his consulate. As a result, Gandara asserts that these violations prevented him from obtaining needed consular assistance in order to notify family members in Uruguay of his arrest and solicit funds to obtain improved legal representation, facilitate his deportation to Uruguay instead of prosecution, and/or arrange for his sentence to be served in Uruguay rather than Georgia. Gandara sought a declaratory judgment, compensatory damages, and punitive damages for these alleged violations.
After an independent review of the record, the district court adopted the Report and Recommendation of the U.S. Magistrate Judge, which recommended that Gandara’s complaint be dismissed on the grounds that it failed to state a cognizable claim under § 1983 and analogized the relief sought by Gandara to that in a habeas corpus petition. Gandara filed an objec *826 tion to the Report and Recommendation and argued, among other things, that the district court improperly relied on Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). He pointed out that he was not challenging his criminal conviction or his sentence, but was seeking civil damages and relief to remedy the violation of his Vienna Convention rights. We affirm the district court’s judgment albeit for different reasons.

Standard of Review

We review a grant of a motion to dismiss for failure to state a claim de novo, “accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff.” Spain v. Brown & Williamson Tobacco Corp., 363 F.3d 1183, 1187 (11th Cir.2004).

Discussion

We begin by noting that the district court improperly dismissed Gandara’s complaint by relying on Heck v. Humphrey to decide that Gandara’s civil complaint on alleged violations of the Treaty was barred because his criminal conviction had not been set aside and a judgment in a § 1983 case could affect the validity of his conviction or sentence.[1] Under the Supreme Court’s ruling in Sanchez-Llamas v. Oregon, 548 U.S. 331, 126 S.Ct. 2669, 165 L.Ed.2d 557 (2006), a violation of the Vienna Convention’s Article 36 does not necessarily require reversal of a criminal conviction or sentence. Thus, in our opinion, Heck does not bar the claim being made here. Gandara is not attacking the validity of his criminal conviction or sentence, but rather pursuing a civil claim for money damages and other civil remedies. There is no legal inconsistency.
This Circuit has not expressly addressed the issue of whether the Vienna Convention contains private rights and remedies enforceable in our courts through § 1983 by individual foreign nationals who are arrested or detained in this country. We have previously commented, however, on the issue of private rights in the context of criminal cases and indicated that we would follow the lead of the First and Ninth Circuits. See United States v. Cordoba-Mosquera, 212 F.3d 1194, 1196 (11th Cir.2000) (the First and Ninth Circuits have indicated that Article 36 does not create privately enforceable rights). Today, for practical and judicial economy reasons, we are going to decide the specific issue presented.[2]
A reading of the text of the Treaty suggests that the scenario established would include several steps: (1) Upon arrest and detention, the foreign national would be advised of the notification procedures established and available, (2) The individual would be asked whether or not he/she desires notification to be given to the consular post of his/her state, and (3) Depending upon the decision made by the individual, notice would be given or no action taken.
All who have dealt with this issue recognize the language of the Treaty’s preamble, which states that “the purpose of such privileges and immunities [created by the *827 Treaty] is not to benefit individuals .... ” Vienna Convention on Consular Relations, pmbl. In spite of this provision, those who find that there are individual rights turn to Article 36, which reads:
[I]f he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this subparagraph.
Vienna Convention on Consular Relations, Apr. 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261, art. 36(l)(b) (emphasis added). The Seventh Circuit in Jogi v. Voges, 480 F.3d 822 (7th Cir.2007), concluded that Article 36 is worded in a way to guarantee that the right conferred by Article 36 belongs to the individual and not the respective governments. That court reasoned that “[i]t is a mistake to allow general language of a preamble to create an ambiguity in specific statutory or treaty text where none exists. Courts should look to materials like preambles and titles only if the text of the instrument is ambiguous.” Id. at 834. That court concluded that once a plaintiff has demonstrated that a treaty confers an individual right, then the right is presumptively enforceable by § 1983. See id. at 835; Gonzaga University v. Doe, 536 U.S. 273, 284, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002).
The dissenting opinion in Cornejo v. County of San Diego, 504 F.3d 853, 872 (9th Cir.2007) also follows this reasoning, by stating that:
[I]t is clear that Article 36(l)(b) confers an individual right. Insofar as it is relevant, the language in the preamble of the Vienna Convention, the congressional intent of the ratifying Senate, the contemporaneous position of the United States Department of State and the tra-vaux préparatoires do not undermine this interpretation. In fact, the contemporaneous position of the United States Department of State and the discussion of Article 36(l)(b) in the travaux prépar-atoires supports my conclusion that Article 36(l)(b) confers an individual right.
This dissent, like Jogi, urges that these individual rights are presumptively enforceable under § 1983.
While the above arguments in favor of individual rights under the Treaty are impressive, we do not follow them for the following reasons.
First, the “context” of a treaty includes its preamble, Vienna Convention on the Law of Treaties art. 31(2), May 23, 1969, 1155 U.N.T.S. 331, and we rely on it to provide context for the terms of Article 36(l)(b) because “a treaty must be interpreted as a whole in light of its object and purpose, including the preamble.” Cornejo, 504 F.3d at 861 n. 13 (citing Vienna Convention on the Law of Treaties art. 31(2); Restatement (Third) of Foreign Relations Law § 325(1) (1987)). The preamble to the Vienna Convention is clear that the drafters did not intend to create individual rights. It states that the signatories “[r]ealiz[ed] that the purpose of such privileges and immunities [created by the Treaty] is not to benefit individuals but to ensure the efficient performance of functions by consular posts on behalf of their respective States.” Vienna Convention on Consular Relations, pmbl. (emphasis added). Indeed, this language has led this court to conclude that “the Vienna Convention itself disclaims any intent to create *828 individual rights[.]” United States v. Duarte-Acero, 296 F.3d 1277, 1281-82 (11th Cir.2002); see also Maharaj v. Sec’y for the Dep’t of Corr., 432 F.3d 1292, 1307 (11th Cir.2005) (containing clear language that the Convention did not create individual rights); United States v. Rodriguez, 162 Fed.Appx. 853, 857 (11th Cir.2006) (relying on Duarte-Acero and concluding that “[t]he Vienna Convention does not confer judicially enforceable individual rights”).
Second, we find the majority opinion in Cornejo very persuasive. As stated there:
Article 36 does not create judicially enforceable rights. Article 36 confers legal rights and obligations on States in order to facilitate and promote consular functions. Consular functions include protecting the interests of detained nationals, and for that purpose detainees have the right (if they want) for the consular post to be notified of their situation. In this sense, detained foreign nationals benefit from Article 36’s provisions. But the right to protect nationals belongs to States party to the Convention; no private right is unambiguously conferred on individual detainees such that they may pursue it through § 1983.
Cornejo, 504 F.3d at 855. Cornejo further emphasizes that “[f]or any treaty to be susceptible to judicial enforcement it must both confer individual rights and be self-executing.” Id. at 856. The Vienna Convention is self-executing because it has the force of domestic law without Congress having to implement legislation. However, “all self-executing treaties do not necessarily provide for the availability of such private actions.” Id. at 857 (quoting Renkel v. United States, 456 F.3d 640, 643 n. 3 (6th Cir.2006)).
Even though treaties may accord enforceable individual rights, most courts accept a “presumption” against inferring such rights from international treaties. Thus, the general rule is that “[ijnterna-tional agreements, even those directly benefiting private persons, generally do not create private rights or provide for a private cause of action in domestic courts, but there are exceptions with respect to both rights and remedies.” Cornejo, 504 F.3d at 859 (quoting Restatement (Third) of Foreign Relations Law § 907 cmt. a (1987)). Furthermore, the use of the word “rights” in paragraph 1(b) “arguably confers on an individual the right to consular assistance following arrest.” Breard v. Greene, 523 U.S. 371, 376, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998). But paragraph 1(b), does not address the nature of “his rights” or how, if at all, they may be invoked. Therefore, this language must be considered in light of the purpose of the Treaty and Article 36. See Cornejo, 504 F.3d at 859 (citing Restatement (Third) of Foreign Relations Law § 325(1) and noting that treaty terms are to be construed in their context and in the light of the treaty’s object and purpose). Hence, the “rights” conferred under Article 36 are meant to facilitate the exercise of consular functions. We agree with the majority opinion of the Ninth Circuit, which summarizes very well the position that the Treaty simply fails to confer individual rights that may be judicially enforced.
Third, the Vienna Convention does not expressly provide for private damage actions. Instead, “the plain words of the Treaty provide that the notification right ‘shall be exercised,’ not that failure to notify should be compensated.” Cornejo, 504 F.3d at 861 n. 14. Therefore, we conclude that the Treaty does not contemplate private damage actions, “and it would not be sound judicial policy to conjure legal theory that would expose individual officers to liability for breaches of international treaties.” Id.
*829 Moreover, the position of the United States Department of State, which is entitled to “great weight,” also reinforces this view.[3] The Department of State has repeatedly affirmed that “the only remedies for failures of consular notification under the Vienna Convention are diplomatic, political, or exist between the states under international law ... [t]he right of an individual to communicate with his consular official is derivative of the sending state’s right to extend consular protection to its nationals[.]” Cornejo, 504 F.3d at 862 (quoting United States v. Li, 206 F.3d 56, 63 (1st Cir.2000)).
In addition, the travaux preparatories of the Vienna Convention supports the State Department’s position: “[Tjhere is no indication that States intended the enforcement of a ‘right’ to consular notification in the courts of the receiving State.” Cornejo, 504 F.3d at 863. Even if the travaux preparatories were susceptible to different interpretations, it would be imprudent under domestic law to create a privately enforceable right that is not explicitly found in the text.[4]
And lastly, but certainly not least, is our court’s prior panel rule. This rule is simply that “we are bound by the holdings of earlier panels unless and until they are clearly overruled en bane or by the Supreme Court.” Swann v. S. Health Partners, Inc., 388 F.3d 834, 837 (11th Cir.2004). Our earlier panels were dealing with criminal cases and not claims under § 1983. However, from those opinions, the announced rule is that the Vienna Convention does not confer enforceable individual rights. Although the issues in our earlier cases differed somewhat, the analysis is exactly the same. That is the law of our circuit.[5]

Conclusion

For these reasons, we affirm the judgment of the district court.
AFFIRMED.

. Under Heck, to recover damages for harm caused by actions whose unlawfulness would make a conviction or sentence invalid, a plaintiff under 42 U.S.C. § 1983 must prove that the conviction or sentence “has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determinations, or called into question by a federal court’s issuance of a writ of habeas corpus.” Heck, 512 U.S. at 486-87, 114 S.Ct. 2364.

. Alternatively, we could simply find that Heck is inapplicable and remand the case to the district court.

. See United States v. Stuart, 489 U.S. 353, 369, 109 S.Ct. 1183, 103 L.Ed.2d 388 (1989) (“meaning attributed to treaty provisions by the Government agencies charged with their negotiation and enforcement is entitled to great weight”).

. Domestic law controls the exercise of rights pursuant to paragraph 2 of Article 36. See Cornejo, 504 F.3d at 863.

. We note that several district courts in our circuit have followed the lead of the Ninth Circuit. See Gardner v. Meggs (N.D.Fla., 2007) (following majority of districts and holding that Article 36 does not create an individual right enforceable by plaintiff where plaintiff alleges violation of civil rights by defendant’s failure to advise him of his rights or acknowledge his status as a foreign national); Lopez v. Wallace (N.D.Ga., 2007) (holding that plaintiff has no "judicially enforceable” right to consular assistance under the VCCR even though plaintiff states that he was convicted and received his sentence without having an opportunity to contact the Colombian Consulate). This district court judgment in Lopez was affirmed in part, vacated and remanded in part without reaching the question at issue. (11th Cir.2008). Although Medellin v. Texas, -U.S. --, 128 S.Ct. 1346, 170 L.Ed.2d 190 (2008) (Medellin IT) dealt with closely related questions, the Court specifically stated that it was not resolving "whether the Vienna Convention is itself 'self-executing' *830 or whether it grants Medellin individually enforceable rights.” Id. at n. 4.