**SOVEREIGN BONDS EXCHANGE LLC, Plaintiff,**

v.

**FEDERAL REPUBLIC OF GERMANY, et al., Defendants.**

**Case No. 10–21944–CIV.**

United States District Court, S.D. Florida, Miami Division.

Oct. 20, 2010.

Robert J. Pearl The Pearl Law Firm, P.A. Naples, FL, James F. Lowy, Lowy Royer Law Firm LLC, Tampa, FL, for Plaintiff.

Gerald J. Houlihan, Houlihan & Partners PA, Miami, FL, for Defendants.

## ORDER

CECILIA M. ALTONAGA, District Judge.

**THIS CAUSE** came before the Court on the Motion to Dismiss of Defendants, HSH Nordbank AG, Kiel; Helaba Landesbank Hessen–Thueringen; LBBW Landesbank Baden–Wuerttemberg, Stuggart; Dekabank Deutsche, Girozentrale; Norddeutsche Landesbank Girozentrale Hannover; Frankfurt Am Main;[1] and WestLB AG, Duesseldorf (collectively, the "German Banks"), [for] Lack of Subject Matter Jurisdiction and for Failure to State a Claim for Which Relief Can Be Granted ("Motion") [ECF No. 26], filed on July 27, 2010. The Court has carefully considered the parties' written submissions, the record, and applicable law.

## I. BACKGROUND[2]

This case is rooted in the modern history of Germany—from that nation's attempt at economic recovery in the wake of World War I, through the dark days of World War II, to the euphoric reunification of the German state in 1990. Plaintiff, Sovereign Bonds Exchange, LLC ("SBE"), filed this suit against Defendants, the Federal Republic of Germany[3] and the Ger-

---

1. Frankfurt Am Main, a city in Germany, was erroneously listed as a defendant on the docket. The docket has subsequently been corrected to delete Frankfurt Am Main as a party and to amend the name of Defendant, Helaba Landesbank Hessen–Thueringen, to include its situs as Frankfurt Am Main. (*See* Mot. 1 n. 1).

2. The allegations of Plaintiff's Complaint [ECF No. 1] are taken as true.

3. The Federal Republic of Germany has not yet made its appearance.

man Banks,[4] in an effort to recover its interest in certain bearer bonds issued by Germany after World War I. (*See* Compl. ¶ 1). In this case,[5] the unredeemed bonds are German Provincial and Communal Banks Consolidated Agricultural Loan Bonds (Secured Sinking Fund Gold Bond Series A 6 & ½ % Dated June 1928—Due June 1, 1958) (the "Bonds"), sold on the New York Stock Exchange and made available to investors in the United States in the late 1920s. (*See id.* ¶¶ 1, 46). The Bonds were issued by provincial and communal banks owned in whole or part by various German provinces, which were legally responsible for the obligations of their respective banks. (*See id.* ¶ 50).

Because many of these provinces and banks were located in East Germany following World War II, holders of the Bonds were unable to demand payment under the terms of the Agreement on German External Debts, February 27, 1953, 4 U.S.T. 443 (the "London Debt Agreement," the "Agreement" or "LDA"), an international agreement negotiated in 1953 between Germany and twenty-one other nations, including the United States. (*See id.* ¶¶ 22–27). The London Debt Agreement did, however, include a provision anticipating reunification:

ARTICLE 25

Action on Reunification of Germany

The Parties to the present Agreement will review the present Agreement on the reunification of Germany exclusively for the purpose of—

(a) implementing the provisions of the Annexes to the present Agreement regarding adjustments to be made in respect of specific debts upon such reunification, except in so far as such provisions are to become automatically operative upon that event;

(b) and making the provisions of the present Agreement applicable to the debts of persons residing in the area reunited with the Federal Republic of Germany; and

(c) making equitable adjustments in respect of debts in the settlement of which consideration is given to the loss of or inability to use assets located in the area reunited with the Federal Republic of Germany.

LDA, art. 25, 4 U.S.T. 443.

On June 11, 2010, SBE filed suit against Germany and the German Banks alleging a violation of the London Debt Agreement, Article 25(b) and (c) (Count I) (*see* Compl. ¶¶ 86–97); breach of contract (Count II) (*see id.* ¶¶ 98–106); false and/or deceptive marketing under the Florida Deceptive and Unfair Trade Practices Act ("FDUT-PA"), Fla. Stat. §§ 501.201–.23 (Count III) (*see id.* ¶¶ 107–118); and a claim of fraud, misrepresentation and fraudulent concealment (Count IV) (*see id.* ¶¶ 119–126). The German Banks filed the present Motion seeking to dismiss the Complaint for lack of subject matter jurisdiction and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*See* Mot. 1; Defs.' Mem. 2 [ECF No. 27]). SBE filed its Response [6] [ECF No. 42] and

---

**4.** A seventh bank, Deutsche Landesbankenzentrale AG, has not made its appearance.

**5.** This is but one of a series of German bond cases filed in United States courts recently. *See World Holdings, LLC v. Germany*, 613 F.3d 1310 (11th Cir.2010) (affirming order denying Germany's motion to dismiss); *Mortimer Off Shore Services, Ltd. v. Germany*, 615 F.3d 97 (2nd Cir.2010); *Sovereign Bonds Exchange, LLC v. Germany* (*"Class Action"*), No. 1:10–cv–23577–CMA, 2010 WL 4000542

(S.D.Fla. Oct. 5, 2010); *Sovereign Bonds Exchange, LLC v. Germany* (*"German Cities"*), No. 1:10–cv–21896–CMA (S.D.Fla. Jun. 9, 2010). A fuller picture of the historical events giving rise to these cases can be found at *World Holdings*, 613 F.3d at 1312–14; *see also World Holdings*, No. 1:08–cv–20198, August 19, 2009 Order 1–5 [ECF No. 139].

**6.** On August 27, 2010, SBE filed Plaintiff's Response to Defndants' [sic] Motion to Dismiss and Declaration of James F. Lowy Esq.

Memorandum in Opposition [7] ("Pl.'s Mem." [ECF No. 43]), to which the German Banks timely filed their Reply [ECF No. 55].

## II. SUBJECT MATTER JURISDICTION

The German Banks seek to dismiss SBE's Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). It is presumed that a federal court lacks jurisdiction in a particular case until the plaintiff demonstrates the court has jurisdiction over the subject matter. *See id.* (citing *Turner v. Bank of No. Am.*, 4 U.S. 8, 11, 4 Dall. 8, 1 L.Ed. 718 (1799); *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 182, 56 S.Ct. 780, 80 L.Ed. 1135 (1936) ("It is incumbent upon the plaintiff properly to allege the jurisdictional facts....")). Attacks on subject matter jurisdiction under Rule 12(b)(1) may be either facial or factual. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir.1990). Like a Rule 12(b)(6) motion, "[a] 'facial attack' on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in the complaint are taken as true...." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.1980) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977)).[8]

The German Banks raise a facial challenge to the Complaint and assert a treaty between the United States and Germany "prohibits bondholders from resorting to the courts of the United States to enforce

---

in Support of Plaintiff's Memorandum in Opposition to Defendant's [sic] Motion to Dismiss and Supporting Memorandum (Doc. # s 26 & 27) and in Support of Plaintiff's Motion to Strike and for Other Relief ("Response"). The Court is perplexed by Plaintiff's Response for two reasons. First, the Response is fashioned as an unsworn declaration by counsel for the Plaintiff. Unsworn declarations are evidentiary in nature and wholly inappropriate at this stage of the proceedings because the motion to dismiss raises only a facial challenge to subject matter jurisdiction and thus, solely tests the allegations set forth in the Complaint. Second, if intended to be an unsworn declaration by counsel, it is insufficient under 28 U.S.C. § 1746 as it fails to contain the magic words, "I declare under penalty of perjury that the foregoing is true and correct. Executed on (date)." 28 U.S.C. § 1746(2). For these reasons, to the extent Plaintiff's Response is non-argumentative and attempts to introduce evidence, it is disregarded.

7. In addition to filing its Response, SBE also filed Plaintiff's Memorandum in Opposition to Defendant's [sic] Motion to Dismiss and Supporting Memorandum (Doc. # s 26 & 27) and in Support of Plaintiff's Cross Motion to Strike Certain Portions of Defendants' Motion and for Other Relief ("Pl.'s Mem."). Attached to Plaintiff's Memorandum are a variety of documents including court decisions and dockets, treaties, and exhibits offered to establish the nexus between the German Banks and the Federal Republic of Germany. Because no factual attack on jurisdiction has been made by the German Banks, Exhibits 8 to 15 are inappropriate evidentiary materials, and they have been disregarded by the Court.

8. Factual attacks differ because they "challenge[] the existence of subject matter jurisdiction in fact ... and matters outside of the pleadings, such as testimony and affidavits, are considered." *Menchaca*, 613 F.2d at 511. If a defendant shows a lack of diversity by meeting its burden of production for a factual attack, then the plaintiff must respond with proof definitively evincing diversity exists. *See OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir.2002). Factual attacks also differ from facial attacks because "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen*, 549 F.2d at 891.

their purported rights ... if they have not validated their bonds in accordance with the 1953 treaty." (Defs.' Mem. 1 (citing Agreement Regarding Certain Matters Arising from the Validation of German Dollar Bonds, April 1, 1953, 4 U.S.T. 885 (the "Validation Treaty"))).

When the German Banks filed this Motion on July 27, 2010, the Eleventh Circuit Court of Appeals had not yet issued its ruling in *World Holdings, LLC v. Germany,* 613 F.3d 1310 (11th Cir.2010), affirming the denial of a motion to dismiss for lack of subject matter jurisdiction in a similar German bonds case.[9] *See id.* at 1317–18. In *World Holdings,* the Defendant, Germany, relied on the same authorities presented by the German Banks in this case. *See id.* at 1314. I concluded subject matter jurisdiction existed under the commercial-activity exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602–11. *See id.* Germany appealed, and the Eleventh Circuit affirmed, relying on *Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 434, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989). *See id.* at 1316.

In its Memorandum, SBE points to the Eleventh Circuit's decision in *World Holdings* and asserts it applies here. (*See* Pl.'s Mem. 2–3, 7–8). The German Banks disagree. (*See* Reply 3). While the German Banks correctly summarize the significance of the *World Holdings* decision— "that the 1953 Treaty did not expressly conflict with the FSIA" (*id.*), they claim "[t]he present case does not involve this interplay between the 1953 Treaty and the FSIA and, hence, the *World Holdings* decision is not dispositive" (*id.*). The German Banks fail, however, to explain why the present case would not "involve the interplay" between the FSIA and the Treaty, especially when SBE directly relies on the *World Holdings* decision in its

Response. Without more, the Court is left to conclude it has subject matter jurisdiction in this matter under the commercial-activity exception to the FSIA.

## III. FAILURE TO STATE A CLAIM

The German Banks seek to dismiss each of the four counts alleged in SBE's Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal,* 129 S.Ct. at 1950 (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca–Cola Co.,* 578 F.3d 1252, 1261 (11th Cir.2009) (citing *Iqbal,* 129 S.Ct. at 1949).

When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and

9. The *World Holdings* decision was entered on August 9, 2010, before SBE filed its Response.

take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir. 1997). But pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal,* 129 S.Ct. at 1950; *see also Sinaltrainal,* 578 F.3d at 1268 ("'[U]nwarranted deductions of fact' in a complaint are not admitted as true for purposes of testing the sufficiency of the allegations.").

The assertions made by the German Banks are analyzed in the order presented in their Motion.

**A. The German Banks Cannot Violate a Treaty to Which They Are Not a Party, and the LDA Does Not Create a Private Right of Action (Count I)**

█ The German Banks contend Count I, "Violation of London Debt Agreement Article 25(b) and (c)" (Compl. ¶¶ 86–97), should be dismissed because (1) the German Banks were not parties to the LDA, and (2) the LDA does not create a private right of action available to SBE. (*See* Defs.' Mem. 9–10). SBE maintains the German Banks were parties to the LDA because they "are or were wholly owned entities by the sovereign and had an obligation to honor the 1953 Treaty, as well as the 1990 Reunification Treaty."[10] (Pl.'s Mem. 4–5). But SBE does not address the issue of whether the LDA creates a private right of action on which it can file suit.

█ "[A] treaty is … primarily a compact between independent nations." *Medellin v. Texas,* 552 U.S. 491, 505, 128

S.Ct. 1346, 170 L.Ed.2d 190 (2008). "It is well established that individuals have no standing to challenge violations of international treaties in the absence of a protest by the sovereigns involved." *Matta–Ballesteros v. Henman,* 896 F.2d 255, 259 (7th Cir.1990). "Thus, the general rule is that '[i]nternational agreements, even those directly benefiting private persons, generally do not create private rights or provide for a private cause of action in domestic courts, but there are exceptions with respect to both rights and remedies.'" *Gandara v. Bennett,* 528 F.3d 823, 827 (11th Cir.2008) (quoting *Cornejo v. Cnty. of San Diego,* 504 F.3d 853, 859 (9th Cir.2007) (citation omitted)). One of those exceptions is the self-executing treaty, which "has automatic domestic effect as federal law upon ratification. … [A] 'non-self-executing' treaty does not by itself give rise to domestically enforceable federal law. Whether such a treaty has domestic effect depends upon implementing legislation passed by Congress." *Medellin,* 552 U.S. at 505 n. 2, 128 S.Ct. 1346. The question here is whether the LDA and, specifically, Article 25 of the Agreement, is self-executing.

█ To determine whether a treaty is self-executing, courts first look to the text of the treaty. *See id.* at 506–7, 128 S.Ct. 1346 (citing *Air France v. Saks,* 470 U.S. 392, 396–97, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985)). If at all ambiguous, the context of the treaty is also considered to determine whether the drafters intended the treaty or its provisions to benefit individuals. *See Gandara,* 528 F.3d at 827 (concluding the context of the Vienna Convention establishes it was not intended to create individual rights). This includes examining the *travaux préparatoires,*[11] *See*

---

**10.** Whether the German Banks were parties to the LDA is not addressed because, as to Count I, the Motion can be decided on the

issue of whether the LDA created a private right of action.

**11.** Literally translated as the "preparatory

*id.,* the "negotiation and drafting history ... [and] the 'post[-]ratification understanding' of signatory nations." *Medellin,* 552 U.S. at 507, 128 S.Ct. 1346 (quoting *Zicherman v. Korean Air Lines Co.,* 516 U.S. 217, 226, 116 S.Ct. 629, 133 L.Ed.2d 596 (1996)). While a treaty may specifically confer upon individuals the right to enforce a provision of the treaty, *see Comm. of U.S. Citizens Living in Nicar. v. Reagan,* 859 F.2d 929, 937 (D.D.C.1988), the "background presumption" is that "treaties do not create privately enforceable rights in the absence of express language to the contrary." *Medellin,* 552 U.S. at 506 n. 3, 128 S.Ct. 1346.

SBE's allegation that the German Banks violated Article 25 of the LDA fails to state a claim because this provision of the LDA is clearly not self-executing. The text of Article 25 is unambiguous and directed solely to the "Parties to the present Agreement." LDA, art. 25, 4 U.S.T. 443. Article 3 defines "Party to the present Agreement" as "any Government as to which the present Agreement has entered into force in accordance with the provisions of Article 35 or Article 36 thereof," which includes the signatory nations and any later acceding Government. *Id.,* arts. 3(h), 35(1), 36(1). Because SBE is only a "creditor"[12] under the Agreement and is not a government, there is no enforceable federal law on which SBE may file suit to enforce Article 25. Therefore, Count I of SBE's Complaint must be dismissed.

**B. SBE Cannot Claim Breach of Contract Because the Bonds Have Not Been Validated (Count II)**

▮ The German Banks assert SBE cannot claim a breach of contract because SBE has not complied, nor does it allege it

complied with the validation requirements of the Validation Treaty. (*See* Defs.' Mem. 10–11). The German Banks rely on *Mortimer Off Shore Services, Ltd. v. Germany,* 615 F.3d 97, 117 (2nd Cir.2010), where the court determined the plaintiff, a non-assenting bondholder, failed to state a claim with respect to its bonds because it could not enforce those bonds unless it had complied with the validation procedures. Quoting from *Mortimer,* the German Banks assert "[b]ecause [plaintiff] has failed to plausibly allege that it either met the statutory validation requirements aimed to represent valid, legal obligation or was not required to do so," SBE has failed to state a claim. (Defs.' Mem. 11 (quoting *Mortimer,* 615 F.3d at 114)).

*Mortimer* is distinguishable from the instant case because unlike the plaintiff in Mortimer, SBE does allege the non-assenting bondholders "were not required to go through The Validation Process" and "have never been able to get ... the responsible obligor, successor corporate entities or financial institutions to redeem, pay or honor the Bond debt." (Compl. ¶¶ 35–36). SBE also alleges "timely demand for payment ... was made upon Defendant[s]...." (*Id.* ¶ 71; see also *id.* ¶ 105). The German Banks have not established the breach of contract claim should be dismissed because the bonds were not validated.

**C. SBE Cannot Claim Breach Because the Statute of Limitations Has Run (Count II)**

▮ The German Banks also seek to dismiss SBE's breach of contract claim on the ground it is time-barred under New York State law, which limits claims " 'upon

---

works," the *travaux préparatoires* serve as the record of negotiations and include the material used in preparing an international agreement. Black's Law Dictionary (9th ed.2009).

**12.** The LDA defines a "creditor" as "a person, other than the Government of the Federal Republic of Germany, to whom a debt is owing." LDA, art. 3(a), 4 U.S.T. 443.

a contractual obligation or liability' " to six years. (Defs.' Mem. 11–13 (quoting N.Y. C.P.L.R. § 213(2) (McKinney 2010))). In response, SBE claims the applicable limitations period for these bonds is twenty years. (See Pl.'s Mem. 11–12). "If the allegations ... show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Jones v. Bock,* 549 U.S. 199, 215, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

The Complaint indicates the Bonds were payable in New York, Massachusetts and Illinois (see Compl. ¶ 46), sold on the New York Stock Exchange and in this district (see id.), with principal and interest payable in New York, Massachusetts and Illinois (see id. ¶ 48).[13] The German Banks maintain New York law applies (see Defs.' Mem. 11), and SBE seems not to dispute this choice-of-law argument. The parties do disagree, however, on which provision of the New York limitations law applies to SBE's breach of contract claim.

The German Banks contend section 213(2) is the appropriate statute (see Defs.' Mem. 12), while SBE relies on section 211(a) (see Pl.'s Mem. 12–13). Section 213(2) requires "an action upon a contractual obligation or liability, express or implied, except as provided in section two hundred thirteen—a of this article or article 2 of the uniform commercial code or article 36–B of the general business law" be commenced within six years. N.Y. C.P.L.R. § 213(2) (MCKINNEY 2010). In support, the German Banks cite a litany of cases involving actions to recover on bonds, foreign and domestic, in which the New York six-year limitations period was applied to the detriment of bondholders. (See Defs.' Mem. 13).

SBE maintains the limitations period for bond claims under New York law is twenty years under section 211(a) and points the Court to the March 29, 2010 Order in *Kupfer v. Germany,* No. 07–Civ–08589–PAC [ECF No. 31] (S.D.N.Y. March 29, 2010). (See Pl.'s Mem. 12–13; see also id. Ex. 4 ("*Kupfer* Order") [ECF No. 43–4] ). In *Kupfer,* a German bearer bonds case alleging breach of contract, the court denied Germany and the German Banks' motion to dismiss on the ground the limitations period was six years where the *pro se* plaintiff maintained the limitations period was twenty years under section 211(a). The court allowed the case to proceed to discovery "in light of the existence of other substantial questions of law and fact." (*Kupfer* Order 3). But as the German Banks correctly note, the *Kupfer* court did not determine section 211(a) applied as a matter of law. (See Defs.' Reply 6). In fact, the *Kupfer* court made no determination on the appropriate limitations period. (See *Kupfer* Order 3).

Section 211(a) provides an extended limitations period for a narrowly-defined category of bonds:

> An action to recover principal or interest upon a written instrument evidencing an indebtedness of the state of New York or of any person, association or public or private corporation, originally sold by the issuer after publication of an adver-

---

**13.** In the third paragraph of section V of their Memorandum of Law, the German Banks reference paragraphs 46 and 48 of the Complaint in stating, "Lee Higginson & Company, the U.S. bank that agreed to sell the Agri–Bonds in the United States, had offices in New York and both principal and interest were payable in New York City at the offices of Lee Higginson & Company." (Defs.' Mem.

11). No such facts appear at paragraphs 46 or 48 of the Complaint. The German Banks also reference "Ex. 1 to Comp." and state: "The language of the bonds does not include a choice of law provision...." (*Id.*). However, the only exhibits included with the Complaint are the six Summons to Defendants and the single-page Civil Cover Sheet. (See Compl. Exs. 1–2 [ECF Nos. 1–1, 1–2] ).

tisement for bids for the issue in a newspaper of general circulation and secured only by a pledge of the faith and credit of the issuer, regardless of whether a sinking fund is or may be established for its redemption, must be commenced within twenty years after the cause of action accrues.

N.Y. C.P.L.R. § 211(a) (MCKINNEY 2010). The German Banks address this provision in a footnote of their Memorandum, stating the law applies "only where a bond is secured by a pledge of the faith and credit of the issuer, which does not apply here as Plaintiff alleges that each Prussian Province was responsible for the debt of the bank located within its borders." (Defs.' Mem. 12 n. 11 (citing Compl. ¶ 50)). In support of their argument, the German Banks cite *Vigilant Ins. Co. v. Hous. Auth. of City of El Paso, Tex.*, 87 N.Y.2d 36, 637 N.Y.S.2d 342, 660 N.E.2d 1121 (1995), where the New York court held the limitations period was six years for bonds issued by the City of El Paso Housing Authority and backed by the "full faith and credit of the United States." *Id.*, 637 N.Y.S.2d 342, 660 N.E.2d at 1124. (*See* Defs.' Mem. 12 n. 11; Reply 6–7).

Which limitations period is applicable— six years or twenty years—thus turns on whether the Bonds were "secured *only* by a pledge of the faith and credit of the issuer." N.Y. C.P.L.R. § 211(a) (McKINNEY 2010) (emphasis added). In each of the cases cited by the German Banks in support of the six-year limitations period, the bonds were secured by something more than good faith. *See Schmidt v.*

*Polish People's Republic,* 742 F.2d 67, 68 (2d Cir.1984) (bondholder acquired interest in railway cars); *Morris v. People's Republic of China,* 478 F.Supp.2d 561, 564 (S.D.N.Y.2007) ("secured by revenues from the Salt Administration of China and central government taxes on four specified Chinese provinces"); *Dar El–Bina Eng'g & Contracting Co., Ltd. v. Iraq,* 79 F.Supp.2d 374, 389 (S.D.N.Y.2000) (Iraqi promissory notes secured by bank); *Town of Brookhaven v. MIC Prop. & Cas. Ins. Corp.,* 245 A.D.2d 365, 668 N.Y.S.2d 37, 38 (1997) (municipal surety bonds).

In the instant case, SBE alleges the Bonds are the obligations of the Defendants, Germany—as legal successor to the German Reich and the former provinces (*see* Compl. ¶ 2), and the German Banks (*see id.* ¶ 49). SBE further alleges the German Banks were "owned in whole or in part by a German province and each province was legally responsible for all obligations of its banks." (*Id.* ¶ 50). SBE's Complaint does not describe a factual scenario similar to *Vigilant Ins. Co.* because the legal relationship between the German Banks and the former East German provinces does not parallel the relationship between the City of El Paso Housing Authority and the United States of America. The United States had no ownership interest in the City of El Paso Housing Authority.[14] Instead, the United States was effectively a third-party guarantor of the Housing Authority's bonds. Because the German Banks have failed to show the Bonds were secured by something more

14. The concept of a government-owned bank is foreign in contemporary America where even the Federal Reserve Banks operate to the benefit of, yet wholly independent from government. While the national government secures deposits in private banks and credit unions through the Federal Deposit Insurance Corporation and the National Credit Union Administration, the federal government does not own banking institutions. The only state-owned bank in the United States is the Bank of North Dakota where deposits are not guaranteed by the FDIC, but by the State of North Dakota itself. *See* BANK OF NORTH DAKOTA: ABOUT BND, www.banknd.nd.gov/about—BND/index.html (last visited Oct. 17, 2010).

than the "pledge of the faith and credit of the issuer," the applicable limitations period under New York law is twenty years.

 But this determination does not fully resolve the issue as the question of *when* the twenty year limitations period began to run is yet unanswered. Interest payments on the bonds were periodically due on June 1 and December 1 of each year, commencing in the year of issue (1928) and continuing until maturity in 1958. (*See* Compl. ¶¶ 46, 48). However, the interest payments ceased in 1933 when the German government issued a moratorium. (*See id.* ¶ 53). The German Banks contend the limitations period for each interest payment commenced on the day after each interest payment was due, and for the bond redemption, the day after the bond matured on June 1, 1958. (*See* Defs.' Mem. 13–14). Under a twenty-year limitations period, the German Banks' position would be that no cause of action could lie after June 1, 1978.[15]

However, SBE asserts the limitations period was tolled as non-assenting bondholders were required to wait to make their redemption claims until after the reunification of East and West Germany, which occurred on September 19, 1990.[16] (*See* Compl. ¶¶ 37, 63). Considering

September 19, 1990 as the commencement of the twenty-year limitations period, SBE's Complaint was filed in a timely manner on June 11, 2010, and the German Banks have not established the limitations period on SBE's breach of contract claim has expired.

## D. SBE's FDUTPA Claim is Insufficient and Invalid (Count III)

 The German Banks seek to dismiss Count III, SBE's FDUTPA claim, and assert SBE lacks standing because it has not alleged an actual injury (*see* Defs.' Mem. 13–14); its pleading is insufficient to state a claim for relief (*see id.* 14); the FDUTPA does not apply to banks (*see id.* 14–15); and the FDUTPA claim is simply a breach of contract claim (*see id.* 15–16). Because the issue of whether the FDUTPA applies to the German Banks is dispositive of the claim, it is the only argument addressed.

Florida law provides the FDUTPA does not apply to "[a]ny person or activity regulated under laws administered by ... [b]anks or savings and loan associations regulated by federal agencies...." FLA. STAT. 501.212(4)(c); *see also Bankers Trust Co. v. Basciano*, 960 So.2d 773, 778 (Fla. 5th DCA 2007) ("FDUTPA does not apply to banks and savings and loan associations regulated by the state or federal government."). SBE alleges the German Banks "are actively engaged in the marketing and/or sales of bonds and other securities in the United States and in Florida." (Compl.¶ 109). The Court takes judicial notice that foreign banks are subject to

---

15. In their Memorandum, the German Banks analyze the limitations period using the six-year period. In the present analysis, the Court employs the same dates advanced by the German Banks using the twenty-year limitations period.

16. SBE further alleges Defendants "repeatedly tolled and revived the starting of the applicable statute of limitations period...." (Compl. ¶ 84). While the German Banks—again in a footnote—protest in passing the allegation as "a bare statement," which is

"highly speculative and conclusory" (Defs.' Mem. 13 n. 12; Reply 6 n. 4), the German Banks disregard the multiple allegations SBE makes in support of its conclusory allegation. (*See* Compl. ¶¶ 71–83). In their Reply, the German Banks make their own bare statement that the "Court should reject Plaintiff's 'equitable tolling' argument ..." without providing any legal basis to do so. (Reply 6). Having failed to show equitable tolling is not appropriate, the German Banks do not meet their burden.

federal regulation under the International Banking Act of 1978, 12 U.S.C. §§ 3101–11, the Foreign Bank Supervision Enhancement Act of 1991 (enacting *id.* §§ 3109–10 and amending the International Banking Act), and the Gramm–Leach–Bliley Act of 1999, 15 U.S.C. §§ 6801–09. *See generally* Bd. of Gov. of the Fed. Reserve Sys., *The Federal Reserve System, Purposes & Functions,* 61, 68–69 (9th ed.2005), *available at* http://www.federalreserve.gov/pf/pf.htm. German Banks—even as foreign banks—are subject to a variety of federal regulations. (*See* Defs.' Mem. 15 n. 13). Accordingly, the German Banks may not be subject to FDUTPA claims; Count III against them must be dismissed.

**E. The Fraud Claim is Insufficiently Pleaded (Count IV)**

■■■ The German Banks seek to dismiss SBE's claim of fraud, misrepresentation and fraudulent concealment (Count IV) because the claim is not pleaded with particularity under the heightened requirements of Federal Rule of Civil Procedure 9(b), nor does it meet the standard pleading requirements of Rule 8. (*See* Defs.' Mem. 16–18). SBE maintains the "complaint contains a detailed analysis of the basis upon which Plaintiff's [sic] allege that the Defendants committed and/or were involved in a fraud against Plaintiff and other bondholders." (Pl.'s Mem. 13).

■■■ "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b).

> Rule 9(b) is satisfied if the complaint sets forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsi-

ble for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."

*Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir.2001) (quoting *Brooks,* 116 F.3d at 1371 (internal quotation omitted)). To conform to the heightened pleading standards of Rule 9(b) a complaint should allege "specifically when, where, by whom or specifically what the representation was," *id.,* although courts have permitted alternative methods of satisfying the particularity requirement. *See Durham v. Business Mgmt. Assocs.,* 847 F.2d 1505, 1512 (11th Cir.1988) (recognizing statements regarding fraud made with particularity in an affidavit).

SBE has failed to allege its fraud count with the specificity required by Rule 9(b) because the Complaint does not plead any details regarding the fraud-related allegations found in paragraphs 16 to 84, or 120 to 126. All of the allegations are pleaded generally. For example, SBE alleges the Defendant Banks "made knowingly false statements and/or misrepresentations of fact related to [the Bonds] by alleging that Plaintiff's predecessors did not make timely claims to validate or not being able to validate their bonds. . . ." (Compl. ¶ 121). To be pleaded sufficiently under Rule 9(b), SBE is required to provide the time and date of the statements; identify who—specifically, the person writing or making the oral representation—made the statement; the content of the statement; how the statement was made; and what the Defendants obtained because of their fraud. Despite the length of SBE's Complaint, the fraud allegations do not meet the standard required by the Federal

Rules of Civil Procedure, and the fraud count must be dismissed.

### F. DekaBank Should be Dismissed as a Defendant–Party from the Complaint

██ Defendant, Dekabank Deutsche, Girozentrale ("DekaBank"), seeks to be dismissed from the Complaint because "the *sole* alleged basis of DekaBank's liability is that it is a successor to Defendant Deutsche Landesbankenzentrale AG which it cannot be as Defendant Deutsche Landesbankenzentrale AG is still in existence and is named as a defendant." (Defs.' Mem. 19 (emphasis added)). DekaBank also asserts the "allegation is merely a legal conclusion not entitled to the presumption of truth and is without any factual support." (*Id.*). In response, SBE maintains Dekabank's argument is inaccurate. (*See* Resp. ¶¶ 19–20).

DekaBank mischaracterizes SBE's allegations. In paragraph 8 of the Complaint SBE alleges DekaBank "is owned in part by Defendants LBBW, Helaba, HSH Nordbank, WEstLB and Nord/LB, as well as various public savings associations in both West and East Germany, also including successors to the original obligors." (Compl. ¶ 8). Unlike *In re IndyMac Mortg.-Backed Secs. Litig.*, 718 F.Supp.2d 495, 507–09 (S.D.N.Y.2010), where the plaintiff only alleged a defendant was a successor-in-interest, and the complaint was "completely devoid of any factual allegations against the [defendant]," *id.*, SBE makes factual allegations against Deka-Bank, as one of the German Banks, throughout its Complaint. Finally, while the Complaint may not be artfully pleaded, it is plausible and not necessarily contradictory—or even impossible in fact—that both a successor bank and its legal predecessor be named defendants in a complaint of this nature.

### IV. CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that Defendants German Banks' Motion to Dismiss **[ECF No. 27]** is **GRANTED in part** and **DENIED in part** as follows:

1. Count I, Violation of the London Debt Agreement, is **DISMISSED with prejudice.**

2. Count III, False and/or Deceptive Marketing and Injunctive Relief, is **DISMISSED with prejudice** as to Defendants, H.S.H. Nordbank AG, Kiel; Helaba Landesbank Hessen–Thueringen, Frankfurt Am Main; LBBW Landesbank Baden–Wuerttemberg, Stuggart; Dekabank Deutsche, Girozentrale; Norddeutsche Landesbank Girozentrale Hannover; and Westlb AG, Duesseldorf.

3. Count IV, Fraud, Misrepresentation and Fraudulent Concealment, is **DISMISSED.**

4. The Motion to Dismiss for lack of subject matter jurisdiction; for failure to state a claim as to Count II, Breach of Contract; and for failure to state a claim as to Defendant, Dekabank Deutsche, Girozentrale, is **DENIED.**

5. Plaintiff, Sovereign Bonds Exchange LLC, shall file an Amended Complaint conforming with this Order **no later than November 2, 2010.**