[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 7, 2011
JOHN LEY
CLERK

No. 10-13915
Non-Argument Calendar

_____

D.C. Docket No. 3:08-cv-00953-HLA-MCR

TONY R. HORN,

Plaintiff-Appellant,

versus

UNITED PARCEL SERVICES, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 7, 2011)

Before EDMONDSON, CARNES and KRAVITCH, Circuit Judges.

PER CURIAM:

Tony Horn appeals the district court's grant of summary judgment in favor

of United Parcel Services, Inc., in his employment discrimination suit alleging a violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621. Horn contends that the district court erred in finding that he failed to establish a prima facie case of age discrimination because (1) the district court improperly departed from our "nearly identical" standard in analyzing his proffered comparators; (2) our "nearly identical" requirement is inconsistent with Supreme Court precedent; and (3) the district court erred in rejecting his comparators as dissimilar. Horn also contends that the district court erred by making various fact findings against him in its summary judgment order.

## I.

Horn, a 50-year-old ex-employee of UPS, filed a complaint in October 2008 asserting that UPS violated the ADEA by terminating him on the basis of his age. Horn's complaint requested a permanent injunction, compensatory and punitive damages, and attorney's fees. Horn alleged that UPS had terminated him under the pretext that he violated company policy regarding employee time cards, that UPS had replaced him with a younger employee, and that he was one of several older UPS employees who had been terminated under "questionable and/or false pretenses," while younger managers faced less severe disciplinary actions for more serious violations.

UPS filed a motion for summary judgment, arguing that Horn could not establish a prima facie case of age discrimination because he was replaced by an older employee and because he failed to identify similarly situated younger employees who had been treated more favorably. First, UPS asserted that Horn was actually replaced by Dawn Shanks, who was older than Horn by two months. Second, UPS argued that Horn's alleged comparators were not similarly situated in all relevant respects because: (1) his allegations regarding the wrongdoings of his comparators were based on speculation; (2) none of the alleged wrongdoings of the comparators were nearly identical in quantity and quality to the conduct for which Horn was discharged, including manipulation of time records, an inappropriate sexual relationship with a subordinate employee, an allegation of sexual harassment, and violations of UPS' package-handling policy; (3) many of the comparators had different positions than Horn, who was the center manager at the Ocala Center at the time of his termination; and (4) none of the decisionmakers who terminated Horn were involved in disciplining his comparators or were even aware of their misconduct.

In support of its motion for summary judgment, UPS submitted the deposition and affidavit of its human resources manager for the relevant time period. According to his testimony, UPS investigated an incident in which Horn

had edited a driver's time card and changed approximately two-and-a-half hours of work to non-compensable lunch time. The HR manager, along with other decisionmakers who ultimately decided to terminate Horn, believed that Horn had changed the time card to hide the fact that the employee had driven more than 14 hours that day, which would have been a DOT violation.

UPS also discovered that Horn had engaged in an inappropriate sexual relationship with Angel Johnson, one of his subordinate employees at the Ocala Center, in violation of UPS' anti-fraternization policy. Additionally, UPS received a complaint from Jackie Maldonado, a female employee at the Ocala Center, accusing Horn of sexual harassment in August 2007. Finally, UPS learned that Horn had been allowing UPS drivers to use his personal garage as a drop-off point for packages that they could not deliver while on their route, also in violation of UPS policy. The HR manager testified that Horn was fired for those violations and that he was replaced by Shanks, who was two months older than Horn.

In his brief opposing UPS' motion for summary judgment, Horn argued that he had established a prima facie case of age discrimination and that UPS' reasons for terminating him were pretextual. Horn asserted that he satisfied the elements of his prima facie case because he was a member of the protected class, qualified

4

to do his job, and he was terminated and then replaced by Brandon Jones, a younger employee, instead of Shanks. Horn also argued that he had identified a total of 29 potential comparators who were disciplined less severely for committing similar violations. Horn argued that UPS' nondiscriminatory reasons for terminating him were pretextual because (1) he was cleared of having an improper relationship with Johnson; (2) he was found not to have committed sexual harassment in the incident involving Maldonado; (3) he acted in accordance with UPS policy in using his garage to store packages for a brief period of time; and (4) he only edited employee time cards to correct existing errors, which was also proper under UPS rules.

The district court granted summary judgment in favor of UPS, finding that Horn had failed to establish a prima facie case of age discrimination. The district court noted that Horn either disputed UPS' allegations of misconduct as unfounded or argued that he was merely following informal company rules. However, the district court noted contrary evidence in the record showing that: (1) Horn's contention that he edited a driver's time card to fix a coding error was contradicted by a security supervisor's statement that there were no errors for him to edit; (2) after an internal investigation, the HR manager believed that Horn in fact edited the time card to hide a DOT violation; (3) Angel Johnson admitted, at

5

the very least, that she and Horn had kissed, which was in violation of UPS'
non-fraternization policy; and (4) Horn was not in fact cleared of any wrongdoing
in the sexual harassment incident involving Maldonado because the investigation
resulted in "no finding of sexual harassment" based on contradictory claims by
Horn and Maldonado and, in any event, UPS terminated him in part based on the
mere allegation of sexual harassment. Furthermore, the district court found that
Horn failed to cite to any other evidence showing a genuine issue of material fact
regarding the garage incident other than his own testimony.

Regarding Horn's replacement, the district court found that Shanks, an older
employee, became his immediate replacement as the center manager at Ocala
Center in September 2007. Despite Horn's contention that he was replaced by
Brandon Jones, a younger employee, the district court concluded that Jones
became the Ocala Center manager in January 2007 when he replaced Shanks.

The district court refused to consider most of Horn's 29 proffered
comparators and rejected the rest as not similarly situated to Horn as a matter of
law. The district court began by noting that: (1) Horn's contentions about three of
his proffered comparators were either unsupported by the record or were based
only on inadmissible hearsay; (2) the record was incomplete as to the ranks and
responsibilities of five of Horn's other comparators; (3) three comparators could

6

not be considered because Horn's citations to the record did not support his assertions regarding their misconduct; (4) eleven comparators were full-time and part-time supervisors and one was a division manager, all of whom had different job titles, ranks, responsibilities, or supervisors than Horn; and (5) Horn had failed to identify the relevant decisionmakers involved in the investigation and disciplinary actions of many of the comparators.

Thus, the district court was left to analyze six of Horn's proffered comparators, who had all been employed by UPS as center managers. The district court rejected four of the remaining comparators because they had only been accused of one act of misconduct. The fifth remaining comparator was not similarly situated because he had only been accused of two acts of misconduct, and the nature of those two acts were not nearly identical to Horn's violations. Finally, the district court found that the only remaining individual was not a proper comparator even though she had committed almost as many violations as Horn because the nature of her violations materially differed from the nature of Horn's violations—she was not accused of violating UPS' non-fraternization policy, engaging in sexual harassment, or instructing her subordinates to store packages in her home garage.

Accordingly, the district court granted UPS' motion for summary judgment

7

without reaching the issue of pretext because Horn could not establish that he was replaced by a younger employee or that any similarly situated employees had been involved in or accused of nearly identical misconduct but were disciplined less severely.

## II.

"We review the district court's grant of summary judgment de novo, viewing the facts and drawing all reasonable inferences in favor of the nonmoving party." Alabama-Tombigbee Rivers Coalition v. Kempthorne, 477 F.3d 1250, 1254 (11th Cir. 2007).

The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). At the summary judgment stage, we apply the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct 1817 (1973), to analyze ADEA claims based on circumstantial evidence of discrimination. See Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000). Under the McDonnell Douglas framework, a plaintiff must first establish a prima facie case of age discrimination by showing that: (1) he was a member of the protected group of persons between the ages of 40 and 70; (2) he

8

was subject to adverse employment action; (3) he was qualified to do the job; and (4) he was replaced by a younger individual. Chapman, 229 F.3d at 1024. Alternatively, even if a plaintiff is not replaced by a member outside his protected class, he may still satisfy the last prong of the prima facie case requirement by identifying similarly situated comparators outside of his protected class who were treated more favorably. See Nix v. WLCY Radio/Rahall Comm'ns, 738 F.2d 1181, 1185–86 (11th Cir. 1984).

A relevant comparator is an employee who is similarly situated to the plaintiff "in all relevant respects." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004) (citation omitted). In determining whether a comparator is similarly situated, we inquire "whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Burke-Fowler v. Orange Cnty., 447 F.3d 1319, 1323 (11th Cir. 2006) (quotation omitted). And "[w]hen making that determination, we require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions." Id. (alteration and quotation omitted). Although a comparator need not have the same job title as the plaintiff to be a sufficient comparator, material differences in "ranks and responsibilities" may render any comparison impossible without "confusing apples

with oranges." See Rioux v. City of Atlanta, 520 F.3d 1269, 1280–81 (11th Cir. 2008); Maniccia v. Brown, 171 F.3d 1364, 1369 (11th Cir. 1999). Similarly, it is relevant, but not dispositive, that different decisionmakers were involved in administering discipline. See Anderson v. WBMG-42, 253 F.3d 561, 565–66 (11th Cir. 2001).

The Supreme Court has recently clarified that a plaintiff must prove that age was the "but-for" cause for the adverse employment action in order to prevail on a disparate-treatment claim under the ADEA. Gross v. FBL Fin. Servs., Inc., ___ U.S. ___, ___, 129 S.Ct. 2343, 2351 (2009); see also Mora v. Jackson Mem'l Found., Inc., 597 F.3d 1201, 1204 (11th Cir. 2010) (recognizing that after Gross, there is no such thing as a "mixed-motive" ADEA case because an ADEA plaintiff must establish that he suffered an adverse employment action"because of" his age). However, in so holding, the Supreme Court in Gross expressly reserved the question of "whether the evidentiary framework of [McDonnell Douglas] . . . is appropriate in the ADEA context." Id. at ___, 129 S.Ct. at 2349 n.2.

Although this Court has yet to address the effect of Gross on a court's summary judgment analysis in a single-motive ADEA case, a majority of our sister circuits have continued to rely on the McDonnell Douglas framework. See Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010) (reasoning

10

that there was no cause to jettison the McDonnell Douglas framework for ADEA

cases after Gross); Anderson v. Durham D&M, L.L.C., 606 F.3d 513, 523 (8th Cir.

2010) (applying McDonnell Douglas framework in an ADEA case after Gross);

Smith v. City of Allentown, 589 F.3d 684, 691 (3d Cir. 2009) (recognizing that

"Gross expressed significant doubt about any burden-shifting under the ADEA,"

but concluding that "the but-for causation standard required by Gross does not

conflict with [the] continued application of the McDonnell Douglas paradigm" in

ADEA cases); Geiger v. Tower Auto., 579 F.3d 614, 622 (6th Cir. 2009) (holding

that the McDonnell Douglas framework should continue to be applied to ADEA

claims until the Supreme Court expressly overrules the model). Because Gross did

not specifically hold that the McDonnell Douglas framework does not apply in the

ADEA context, and because the but-for causation standard of Gross is consistent

with the McDonnell Douglas framework where the burden of persuasion to show

discrimination remains at all times with the plaintiff, we will apply the McDonnell

Douglas framework to determine whether Horn established a prima facie case that

age discrimination was the but-for cause of his adverse employment action. See

Gandara v. Bennett, 528 F.3d 823, 829 (11th Cir. 2008) (holding that this Court is

"bound by the holdings of earlier panels unless and until they are clearly overruled

en banc or by the Supreme Court").

11

III.

First, Horn argues that the district court applied an incorrect legal standard by failing to consider his contention that he did not actually commit any of the work-rule violations of which he was accused.  This argument is without merit. As we have explained:

> [N]o plaintiff can make out a prima facie case by showing just that she belongs to a protected class and that she did not violate her employer's work rule.  The plaintiff must also point to someone similarly situated (but outside the protected class) who disputed a violation of the rule and who was, in fact, treated better.

Jones v. Bessemer Carraway Med. Ctr., 137 F.3d 1306, 1311 n.6 (11th Cir. 1998), superseded in part by 151 F.3d 1321 (11th Cir. 1998).

Second, Horn argues that the district court improperly departed from our "nearly identical" standard by requiring him to demonstrate that he was treated less favorably than other similarly situated employees who had been accused of the same misconduct.  Horn further argues that the district court's requirement of identical comparators rather than nearly identical comparators was also inconsistent with Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 128 S.Ct. 1140, 1147 (2008) (acknowledging in dicta that "had the District Court applied a per se rule excluding [evidence of employees with different supervisors as irrelevant], the Court of Appeals would have been correct to conclude that it

had abused its discretion"). We reject Horn's contention that the district court applied an incorrect legal standard. First, the district court did not improperly depart from this Court's "nearly identical" standard because it expressly cited the correct law, and as we will explain, it applied that law correctly in analyzing Horn's proffered comparators. Second, we also reject Horn's reliance on dicta in Mendelsohn to extrapolate that case's specific evidentiary holding into a broader decree abrogating this Court's "nearly identical" standard. See Mendelsohn, 552 U.S. at 386–87, 128 S.Ct. at 1146 (holding that it was improper for the court of appeals to make its own determination as to whether evidence regarding discrimination by others should have been admitted under Rules 401 and 403).

Horn also argues that the district court erred by failing to consider his proffered comparators or by rejecting them as not similarly situated as a matter of law. As an initial matter, the district court properly distinguished Horn's case from those of his proffered comparators who were full-time and part-time supervisors because Horn was employed as a center manager. As the center manager at the Ocala Center, Horn was the highest ranking employee in the center and was responsible for its overall operation, including: (1) managing all full-time and part-time supervisors, drivers, and hourly employees at the center; (2) ensuring that all employees abided by UPS policies and procedures; and (3)

13

reviewing and approving employees' time cards. Horn reported to the division manager who oversaw the division that included the Ocala Center, while supervisors reported to the center manager. On the other hand, full-time supervisors only supervised a group of employees or a particular operation within a package center, and part-time supervisors had even less responsibility. Therefore, the district court did not err by rejecting Horn's comparators on the basis of material differences in rank, responsibilities, and supervisors. See Rioux, 520 F.3d at 1280–81.

And as the district court reasoned, the other six center managers were not proper comparators because they were not accused of "nearly identical" misconduct. Four of the other center managers had been accused of only one "integrity violation," whereas Horn had been accused of three "integrity violations" and three other violations. Another one of the center managers had been accused of only two violations, neither of which was nearly identical to Horn's alleged violations. Horn's final potential comparator was not similarly situated even though she had committed a similar number of violations as Horn (including manipulating time cards) because she had not been accused of violating UPS' non-fraternization policy, engaging in sexual harassment, or instructing her subordinates to store packages in her home garage. Instead, she had been accused

14

of falsifying delivery reports, failing to scan packages, and falsifying documents on time-sensitive delivery failures, allegations which were materially different from those made against Horn.

Horn also argues that because he refuted UPS' allegations of fraternization, sexual harrassment, and improper package-handling, we should look only to comparators who were likewise accused of falsifying time cards or other similar "integrity violations."  However, Horn cannot discharge his burden to make out a prima facie case of discrimination by claiming that he did not commit the alleged violations, and the district court properly inquired whether Horn and his comparators were "involved in or accused of" similar conduct but received disparate discipline.  See Burke-Fowler, 447 F.3d at 1323.  Thus, the district court did not err by considering whether Horn's proffered comparators were accused of "nearly identical" misconduct, including accusations of misconduct similar to those that Horn claims did not in fact occur.

Finally, we also reject Horn's contention that the district court erroneously resolved factual disputes in favor of UPS.  Horn argues that the district court erred by:  (1) rejecting his explanation for one of his alleged time card violations as conclusory, even though he specifically claimed that he was not guilty of the charge; (2) disregarding his evidence that UPS had coerced Johnson into admitting

15

that she had a sexual relationship with him; (3) disregarding his evidence that the alleged sexual harassment incident did not occur; (4) determining that the non-fraternization policy was in effect during his employment; (5) finding that supervisors were unaware of the misconduct of one of his proffered comparators; (6) rejecting some of his comparator evidence merely because he did not have personal knowledge of the facts; and (7) finding that Shanks replaced Horn as center manager in spite of Horn's insistence that he was actually replaced by Brandon Jones, a younger employee.

Considering all of the evidence in the light most favorable to Horn, he still cannot establish that there remains a disputed genuine issue of material fact that would preclude summary judgment in favor of UPS. First, as we have explained, for the purposes of whether Horn established a prima facie case, it is irrelevant whether he actually committed any of the work-rule violations of which he was accused because the district court only inquired as to whether Horn and similarly situated employees were "involved in or accused of" nearly identical misconduct but received disparate discipline. See Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1363 n.3 (11th Cir. 1999) ("An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct."). Second, the district court's

finding that the non-fraternization policy was in effect during his employment was supported by the record, and Horn has not identified any contrary evidence to dispute the district court's factual finding.

Horn's contentions regarding the district court's failure to consider some of his comparator evidence are also without merit. Although Horn has identified comparators that he contends were improperly excluded from the district court's analysis, those comparators were not similarly situated as a matter of law because they were not involved in or accused of the same quantity and quality of violations as Horn. Thus, the district court did not erroneously decide any disputed issues of fact concerning Horn's comparators.

And lastly, the only evidence that Horn was replaced by Jones instead of Shanks was the deposition testimony of UPS' HR manager, which he retracted soon thereafter during the same deposition. Initially, UPS' HR manager testified that Horn was replaced by Jones. After a short recess, the HR manager testified that Horn was actually replaced by Shanks, who was then replaced by Jones a few months later. The HR manager reaffirmed his testimony in a later affidavit, stating that Horn was replaced by Shanks and adding that he was unaware of any plans for Brandon Jones to be relocated to the Ocala Center at the time Shanks replaced Horn. Furthermore, Jones himself testified that he replaced Shanks as the center

manager at the Ocala Center after she had worked there for approximately four months as Horn's replacement. In view of Jones' testimony, inconsistencies in the testimony of UPS' HR manager are not sufficient to create a genuine issue of material fact regarding the identity of Horn's replacement. In determining whether summary judgment is appropriate, we are required to draw all reasonable inferences in favor of the non-moving party, not all possible inferences. Absent some evidence indicating that the appointment of Shanks to replace Horn was designed to disguise discrimination, the inconsistent testimony of a witness, corrected in the same deposition, affirmed by an affidavit, coupled with the consistent testimony of another witness, is not sufficient to create a genuine issue of material fact.

Accordingly, the district court did not err in concluding that Horn failed to make out a prima facie case of discrimination because he failed to show that he was replaced by a younger employee or that similarly situated comparators who engaged in nearly identical misconduct were not terminated.

**AFFIRMED.**