[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-15749
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 1, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:09-cv-00260-RWS

MARK EAST,

                                                    Plaintiff-Appellant,

versus

CLAYTON COUNTY, GEORGIA,
a Subdivision of the State of Georgia,
ALEX S. COHILAS,
Fire Chief, in His Official and Individual Capacity,

                                                    Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(August 1, 2011)

Before HULL, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Mark East, a firefighter in his forties, appeals the district court's grant of summary judgment to his former employer, Clayton County (the "county"), and the Fire Chief of Clayton County, Alex Cohilas, (collectively "defendants"), as to his age discrimination claim under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq*. ("ADEA"), and his procedural due process claim under 42 U.S.C. § 1983. East was placed on unpaid administrative leave based on allegations that he started rumors that Cohilas misused funds and the Assistant Fire Chief, Jeff Hood, received a driving under the influence ("DUI") charge. East first argues that he submitted direct evidence of the Cohilas's discriminatory intent against him through the affidavits of other firefighters. Second, concerning circumstantial evidence, East contends that he met the *prima facie* case for age discrimination by presenting evidence that younger employees were treated more favorably than him. Finally, East argues that, because his state remedy was inadequate, he could pursue his procedural due process claim for a civil service hearing under § 1983 in federal court. For the reasons set forth below, we affirm the district court's grant of summary judgment to the defendants as to these claims.

I.

East began employment with the county as a firefighter on May 9, 1988, had 20 years of experience with the county fire department, and had attained the rank of lieutenant by the time he was placed on administrative leave without pay on February 14, 2008. As lieutenant, East was the highest ranking officer at his station. He supervised five firefighters at Station Seven, C-shift, including Sergeant Rodney Hakeem and Firefighter Duel Lee. East's chain of command included, in ascending order, Battalion Chief Jeff Thomas, Deputy Chief of Operations Andy Condrey, Hood, and Cohilas.

According to Hakeem, on January 12, 2008, East asked Hakeem if he "had heard about 'the Chiefs yet?'" Hakeem responded that he had not and walked away. On January 15, 2008, Lee approached Hakeem and asked if he had heard any rumors about Cohilas. East, overhearing their discussion, walked over and voluntarily shared that Cohilas was due to be terminated as a result of misusing funds and that Hood's job was in peril due to a DUI charge. Later that same day, East "gleefully" reported to Lee and Hakeem that "Car 1 and Car 2 are gone." Hakeem contacted a trusted officer in the department to verify East's report that Cohilas and Hood were terminated, was told it was false, and then confronted East about it. However, East continued to assert that the rumor was true. Hakeem was around 40 years old at the time these events occurred.

3

When Cohilas heard this information, he was particularly troubled that a lieutenant would make such an untruthful statement to his subordinates and then continue to insist that the lie was true. To Cohilas, such behavior from a lieutenant "undermine[d] the credibility of the entire department." He ordered an investigation into East's actions, but did not directly participate in the initial interviews. On January 18, 2008, Hood, Condrey, and Thomas interviewed East and his five crew members on Shift C to investigate the rumors. After reviewing the progress of the investigation, Cohilas felt that East had made very specific statements to Hakeem and Lee regarding the misuse of funds and DUI allegation, and that East still had not definitively identified when or from whom he first learned of these rumors.

Cohilas, Condrey, Hood, and Thomas met with East again on February 14, 2008, to continue the investigation. According to Cohilas, at that meeting, East told Cohilas that he had first heard the rumor about Cohilas from either Sergeant David Wilson or retired officer Ray Banks. But Cohilas said that, when pressed, "East was evasive and contradictory." East also told Cohilas that he could not recall discussing the rumor about Hood with either Wilson or Banks. He admitted telling Hakeem and Lee that Hood had been terminated for a DUI charge, but could not explain where he heard that rumor. Cohilas told East that he did not

4

believe him, and it appeared that East was the only source of the specific rumor about Hood allegedly receiving the DUI charge. Cohilas said that East did not offer a defense in response. Cohilas placed East on temporary unpaid administrative leave, during which East could use sick and annual leave time, pursuant to Civil Service Rule 5.458, while Cohilas continued to investigate the issue. East stated that he realized at that meeting that the command staff did not believe him that he was not the source of the rumors. East admitted that his age was never mentioned in any of the meetings concerning the investigation, and East was not aware of Cohilas saying anything to him or anyone else about East's age. East was directed to return to work on February 26, 2008, but did not do so because he wanted to seek medical attention about some problems he was experiencing.

According to a memorandum from Condrey to the file dated February 15, 2008, § 3.11.2 of the county fire department employee manual provided that "[n]o member of the department shall knowingly or carelessly slander, make false accusations about or repeat unsubstantiated rumors about other individuals, violations of this rule may result in disciplinary action up to and including termination." Pursuant to Civil Service Rule 5.458, an employee who is accused of a violation, which if true would likely result in suspension or dismissal, may be

5

placed on unpaid administrative leave. Further, the rule provides that "[t]he unpaid administrative leave shall remain in effect while the subject matter is under investigation, however, the same shall not exceed four (4) weeks absent without approval of the [county] Board [of Commissioners]."

East sent a grievance letter to Renee Bright, the Human Resources Director for the County Board of Commissioners, on February 18, 2008. The letter stated that it was a "formal grievance" related to his unpaid administrative leave, that hewas being "harassed" and "badgered and falsely accused" of circulating rumors, and that he believed "his due process rights [were] being violated." East requested that the matter be investigated and that he "be placed on paid administrative leave pending resolution of the matter."

On February 26, 2008, the personnel department received a note from East's doctor, stating that East could not return to work or communicate with anyone at work, but not specifying when he would be able to return. On February 28, 2008, East received a letter from the county's personnel department stating that he was placed on leave under the Family Medical Leave Act, starting on February 25, 2008.

According to Bright, she interpreted East's letter to be a grievance under Civil Service Rule 11.200. She stated that a grievance procedure is intended to

6

assist parties to resolve problems informally. Bright did not believe that pursuing a grievance resolution was practical with East being out on medical leave indefinitely and the fire department's uncompleted investigation. It was Bright's understanding that Cohilas would not be able to complete the investigation until East returned to work.

Pursuant to Civil Rule 11.202, "[e]mployee grievances should, insofar as possible, be [addressed] informally. However, it is recognized that there will be occasional grievances which can be resolved only by means of a systematic review conducted in accordance with the provisions of a formal grievance procedure." The formal procedure requires the employees to present their grievances first to their immediate supervisor, then the department head, and then to the personnel director only after they feel that those grievances have not been satisfactorily heard or resolved at the previous levels. The rule further provides that "[i]f necessary, an informal hearing may be held at which the aggrieved employee(s) shall present their grievance(s) to the Board and the Personnel Director."

The evidence also included affidavits that East submitted from Wilson, Banks, Keith Waller, and Leroy Travis, all of whom formerly worked for the county fire department. Wilson stated that he was 55 years old and demoted for a "common mistake" that had not been used as a reason for demotion before. He

asserted that "[i]t was common knowledge that Chief Cohilas wanted the 'youngest and best' department, as he himself termed it." Wilson noted that Condrey and Battalion Chief Lowe questioned him about the rumors about Cohilas, and pressured him to say that East was the source of the rumors. He felt that they wanted East out of the department. According to Banks, Cohilas used a strenuous sporting competition known as the Combat Challenge, "as a means of pushing older firefighters out of the workforce through retirement or otherwise." In his affidavit, Waller asserted that he retired two years prior to receiving full benefits because he "could no longer tolerate the treatment of older workers." Waller stated that East was not the source of the rumor because Waller was the one who told East, and East "was startled and found it funny" when Waller told him. Likewise, Travis asserted that he retired early in October 2009, because he "had become fed up with what was happening in the department" regarding Cohilas "targeting older workers."

After discovery, the defendants filed a motion for summary judgment, arguing for the dismissal of all claims, and relevant to the present appeal, they argued as follows. The county was entitled to summary judgment on East's age discrimination claim because East had presented no evidence that similarly situated employees under 40 were treated more favorably, as he had no evidence

8

of any younger lieutenants who were accused of engaging in "nearly identical" conduct. Even if East could establish a *prima facie* case, the defendants submitted that he could not establish a pretext for age discrimination or establish that age was the but-for cause of the adverse action because the county fire department had a legitimate reason for the adverse employment action. The defendants also argued that East's 42 U.S.C. § 1983 procedural due process claim should fail because he had an adequate state remedy, namely mandamus. They contended that the impact of his unpaid administrative leave was minimal since it was for a short period of time and was limited to investigating the allegations, and thus, a formal pre-deprivation procedure was not required.

In opposing the defendants' motion for summary judgment, East made the following arguments relevant to the appeal. As to his age discrimination claim, the affidavits of four individuals who worked with Cohilas, which alleged that he was biased against older firefighters, constituted direct evidence of discrimination. Further, East had established a *prima facie* case of discrimination because he showed that all the individuals, except Wilson, who were investigated concerning the rumors were younger than him and were not taken off duty without pay. The work rule, § 3.11.2 of the employee manual, cited by Cohilas for removing East from duty, applied to all employees regardless of rank. He did not violate this

9

work rule and his conduct was similar to persons outside the protected class, yet he was disciplined more severely. The defendants' proffered nondiscriminatory reasons for the adverse employment action were pretext for age discrimination. The defendants' violated his procedural due process by not giving him a grievance hearing or appeal for over two years. As to his § 1983 procedural due process claim, under Georgia law, mandamus is not available to an employee alleging a due process violation who had an adequate legal remedy, including administrative appeals and hearings.

The district court found in relevant part that East had not presented direct evidence of age discrimination because his proffered evidence only related to the defendants' attitude generally and not to this specific adverse action. The court determined that East did not establish a *prima facie* case of discrimination based on circumstantial evidence because he had not established that a similarly situated employee outside of his class was treated more favorably. Specifically, the court noted that employees in paramilitary organizations, such as fire departments, "are generally not similarly situated if they are not the same rank." It also indicated that East had not affirmatively identified any individual comparator outside his class, but rather he summarily stated that "numerous employees were questioned regarding these rumors," and he was the only one punished. As for the other two

10

firefighters involved in the initial rumor accident, Hakeem and Lee, the court found that neither of them was of East's rank and that East's position as lieutenant was "unique," as he held the "ultimate supervisory position at that station." Moreover, the court noted that East was the only person who was "reported" to command as having spread the rumor.

The court also found that East had a sufficient state law remedy which precluded his 42 U.S.C. § 1983 claim predicated on procedural due process. It noted that, while East claimed that he had filed an unanswered hearing request and the personnel director claimed that it was unclear whether East had a right to such a hearing, East still had mandamus as a sufficient state law remedy above and beyond the civil service remedies. Therefore, the court granted the defendant's motion to dismiss East's procedural due process § 1983 claims. It also dismissed East's other claims not relevant to this appeal.

## II.

We review *de novo* a district court's grant of summary judgment. *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1357 (11th Cir. 1999). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 1358. In

11

making this determination, the court must draw all reasonable inferences in favor of the nonmoving party.  *Id*.

III.

A plaintiff can establish age discrimination either through direct or circumstantial evidence.  *Mora v. Jackson Mem'l Found, Inc.*, 597 F.3d 1201, 1204 (11th Cir. 2010).  Each approach is discussed separately below as it relates to East's disparate treatment claim.

A. Direct Evidence

"Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption."  *Standard v. A.B.E.L. Servs.*, 161 F.3d 1318, 1330 (11th Cir. 1998).  It consists of "[o]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age."  *Van Voorhis v. Hillsborough Cnty. Bd. of Cnty. Comm'rs*, 512 F.3d 1296, 1300 (11th Cir. 2008) (quotation omitted).  Evidence that merely suggests a discriminatory motive is, by definition, circumstantial evidence.  *Burrell v. Bd. of Tr. of Ga. Military Coll.*, 125 F.3d 1390, 1393-94 (11th Cir. 1997).  "[R]emarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination."  *Standard,* 161 F.3d at 1330.

East relies on *Wright v. Southland Corp.*, 187 F.3d 1287, 1293-1303 (11th Cir. 1999), for the "preponderance" definition of direct evidence, to argue that the court erred in applying the incorrect standard. According to *Wright*, "'direct evidence,' in the context of employment discrimination law, means evidence from which a reasonable trier of fact could find, more probably than not, a causal link between an adverse employment action and a protected personal characteristic." 187 F.3d at 1293. No published opinion has overruled this definition, nor has a published opinion directly applied this standard since the *Wright* decision was issued in 1999. In any event, even if the preponderance language in *Wright* controls this case, East still has not submitted evidence that, more probably than not, establishes a causal link between the adverse employment action and his age.

East relies solely on the affidavits from other older, retired firefighters to support to his contention that he has established direct evidence of Cohilas's discriminatory intent to place him on unpaid administrative leave. With the exception of Wilson's affidavit, the statements from the other former firefighters were unrelated to the instant adverse employment action, and thus, do not establish a probable causal link between East's leave and his age and do not constitute direct evidence. *See Wright* 187 F.3d at 1293; *Standard,* 161 F.3d at 1330. Even though Wilson stated that he was pressured to say that East started the rumors

13

because Cohilas wanted to fire East, his remarks are not considered direct evidence of age discrimination. While the remarks may indicate that Cohilas wanted to fire East, they do not indicate that Cohilas was motivated by an intent to discriminate against East based on age. *See Standard,* 161 F.3d at 1330.

Moreover, East has not presented any evidence that Cohilas made any remark about his age in connection with the decision to place him on unpaid leave. In fact, East testified that his age was never mentioned in any of the meetings concerning the investigation, and he was not aware of Cohilas saying anything to him or anyone else about his age. Because he has not submitted any evidence of Cohilas making an ageist remark in connection with the decisionmaking process itself, East has not established direct evidence of Cohilas's discriminatory intent. *See Standard,* 161 F.3d at 1330.

B. Circumstantial Evidence

The Supreme Court in *Gross v. FBL Fin. Servs., Inc.* held that to establish a disparate-treatment claim under the ADEA, a "plaintiff must prove by a preponderance of the evidence . . . that age was the 'but-for' cause of the challenged employer decision." 557 U.S. __ , 129 S.Ct. 2343, 2351, 174 L.Ed.2d 119 (2009); *see also Mora*, 597 F.3d at 1204 (noting, in our only published opinion interpreting *Gross*, that "an ADEA plaintiff must establish 'but for'

14

causality . . . the employer either acted 'because of' the plaintiff's age or it did not"). Even so, the Supreme Court expressly reserved the question of "whether the evidentiary framework of [*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973)] . . . is appropriate in the ADEA context." *Gross*, 557 U.S. at __, 129 S.Ct. at 2349 n.2.

We have used the analytical framework from *McDonnell Douglas* in ADEA cases where a plaintiff offers circumstantial evidence to prove a claim of discrimination. *Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1268 n.6 (11th Cir. 2001) (noting that "[a]lthough the *McDonnell Douglas* framework originally applied to Title VII cases, it is now widely accepted that the framework applies to claims of discrimination under the ADEA as well"). Since the Supreme Court did not explicitly overrule our precedent in applying the *McDonnell Douglas* test to ADEA cases involving circumstantial evidence, we review East's claims under both *McDonnell Douglas* and *Gross*. *See Gandara v. Bennett*, 528 F.3d 823, 829 (11th Cir. 2008) ("we are bound by the holdings of earlier panels unless and until they are clearly overruled *en banc* or by the Supreme Court").

Applying the *McDonnell Douglas* framework, the plaintiff can establish a *prima facie* case of age discrimination by showing he was: (1) a member of the protected class; (2) qualified for his current position; (3) subject to adverse

15

employment action; and (4) treated less favorable than any younger, similarly situated employee. *Zaben v. Air Prods. & Chems., Inc.,* 129 F.3d 1453, 1457 (11th Cir. 1997) (holding that replacement by someone outside the protected group is required to make a *prima facie* age discrimination case); *see also O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996) (holding that being replaced by someone outside the protected class is not a proper element of the fourth prong because replacement by a substantially younger employee is a far more reliable indicator of age discrimination); *Knight v. Baptist Hosp. of Miami, Inc.,* 330 F.3d 1313, 1316 (2003) (holding that more favorable treatment of similarly situated employees outside the race classification is required to make a *prima facie* race discrimination case).

Once a plaintiff establishes a *prima facie* case of age discrimination, the employer must offer legitimate, nondiscriminatory reasons for the employment action. *Mitchell v. USBI Co.,* 186 F.3d 1352, 1354 (11th Cir. 1999). "If the employer does so, the plaintiff bears the ultimate burden of demonstrating that the employer's proffered reasons are a pretext for discrimination." *Id.* "If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it." *Springer v.*

16

*Convergys Customer Mgmt. Grp., Inc.,* 509 F.3d 1344, 1350 (11th Cir. 2007) (quotation omitted). "[A] plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's proffered nondiscriminatory reasons is pretextual." *Chapman v. AI Transport*, 229 F.3d 1012, 1037 (11th Cir. 2000) (*en banc*).

Importantly, "the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the employee remains at all times with the plaintiff." *Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1162 (11th Cir. 2006) (quotation omitted). Further, if the employer acted on its honestly-held belief that the employee had engaged in misconduct, even if it was mistaken, there is no discrimination. *Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991).

Applying the *McDonnell Douglas* test, the district court correctly concluded that East did not establish a *prima facie* case for his termination claim because he did not show that he was treated less favorably than any younger, similarly situated employee. *See Zaben,* 129 F.3d at 1457; *Knight,* 330 F.3d at 1316. There is no evidence that any younger employee was suspected of being the source of the rumors. As East testified, he and Wilson were the only ones investigated as being the source of the rumors, and Wilson was older than East and did not face any

adverse employment action for this incident, although he was later demoted for a separate incident. It is also noteworthy that Hakeem, who East contends lied to the command staff, was around 40 years old, and thus, was close to East's age when the alleged events occurred. Thus, East has not presented any evidence that anyone younger than him had been suspected of starting the rumor or believed to have committed any similar violation and who did not receive unpaid administrative leave.

Even assuming *arguendo* that East could establish a *prima face* case for his adverse employment action, the defendants presented legitimate, non-discriminatory reasons for placing him on unpaid administrative leave. Cohilas stated that he thought East was the source of the rumors and wanted to investigate the matter further. East did not provide any rebuttal to this assertion, and in fact, acknowledged that he thought Cohilas and the others did not believe him when he said he did not start the rumors. As such, he did not meet the employer's reason head on and rebut it. *See Chapman*, 229 F.3d at 1030. Construing the facts in the light most favorable to East, Cohilas, even if mistaken, acted on his honestly held belief that East had engaged in misconduct warranting unpaid administrative leave. *See Elrod*, 939 F.2d at 1470. Thus, East failed to meet his burden to show that the defendants' proffered reasons for terminating him were pretextual. *See*

*Brooks*, 446 F.3d at 1162.  For the same reasons, he has also failed to present evidence establishing that age discrimination was the "but-for" cause of his adverse employment action to meet the *Gross* test.

IV.

We conduct a *de novo* review of constitutional law issues.  *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1303 (11th Cir. 2009). The Due Process Clause of the Fourteenth Amendment states that "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1.  This clause has been interpreted to provide two kinds of due process protection: procedural due process and substantive due process.  *McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994) (*en banc*).

To state a claim under 42 U.S.C. § 1983 for denial of procedural due process, an individual must show "the state refuse[d] to provide a process sufficient to remedy the procedural deprivation."  *Cotton v. Jackson*, 216 F.3d 1328, 1330-31 (11th Cir. 2000) (quotation omitted).  "This rule . . . recognizes that the state must have the opportunity to remedy the procedural failings of its subdivisions and agencies in the appropriate fora-agencies, review boards, and state courts before being subjected to a claim alleging a procedural due process violation."  *Id.* at 1331 (quotation omitted).

19

Because East did not have a hearing, he is correct that he does not have a right to a writ of *certiorari*. *See* O.G.G.A. § 5-4-1(a) (stating that the "writ of certiorari shall lie for the correction of errors committed by any inferior judicatory"). However, pursuant to Georgia law, when no other specific legal remedy is available and a party has a clear right to have a certain act performed, a party may seek mandamus." *Cotton*, 216 F.3d at 1332; O.C.G.A. § 9-6-20. Under Georgia law, this procedure can be used to compel a governmental body to act in compliance with the law, for instance to require a governmental board to hold a hearing as provided by law. *Acree v. Walls*, 243 S.E.2d 489, 493 (Ga. 1978).

While there is an issue of fact as to whether East was entitled to a civil service board hearing, there is no genuine issue of material fact as to his procedural due process claims for the following reasons. First, even assuming, *arguendo*, that East had a clear right to a hearing and the defendants deprived East of procedural due process by failing to provide him with such a hearing, East had a state remedy available to address that deprivation. East could have petitioned Georgia courts for a writ of mandamus, and as such, his procedural due process claim is not actionable. *See Cotton*, 216 F.3d at 1332; O.C.G.A. § 9-6-20. Second, if East did not have a legal right to these procedures, as he suggests in his effort to bypass the mandamus requirement, he had no due process rights to those

20

procedures in the first place. It is noteworthy, that it appears that East likely received sufficient due process because he was only placed on unpaid administrative leave from February 14 to 25, 2008, he was informed of his alleged violation, and he had several opportunities, albeit informal ones, to rebut the allegations. Accordingly, the district court did not err in finding that East's procedural due process rights were not violated under 42 U.S.C. § 1983.

For the foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED.**